Filed 7/25/24  P. v. Berber CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL ANTHONY BERBER,<br><br>    Defendant and Appellant. | G063310<br><br>(Super. Ct. No. INF2102186)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Timothy J. Hollenhorst, Judge.  Affirmed.

Nicholas Seymour, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Kristen A. Ramirez, Deputy Attorneys General, for Plaintiff and Respondent.

*       *       *

Michael Anthony Berber appeals from the judgment following his conviction for robbery. (Pen. Code, § 211, subd. (c).) He does not challenge the merits of the conviction; his sole contention is that the court abused its discretion by denying his oral request to substitute counsel and continue the trial, which he made on the day the case was set for trial—the last day the case could be tried—and after the case had been given priority assignment to a courtroom. We find no abuse of discretion and affirm.

Berber failed to act diligently in seeking to substitute his counsel, as he claimed he had retained his new lawyer at least a week before making his oral request to substitute counsel after the case was assigned to a courtroom for trial. Further, because the lawyer Berber claimed to have newly retained neither appeared before the court nor contacted Berber's appointed counsel, the court had no firm basis to conclude the new attorney was prepared to actually take over Berber's case. And finally, the fact Berber waited until after his appointed counsel announced ready for trial and the court had found a courtroom to conduct the trial, before announcing his desire to substitute counsel and continue the case, supports the inference that judicial resources would have been wasted by granting Berber's eleventh-hour request.

2

## FACTS

In June 2021, Berber rented a room in a motel. About twenty minutes later, he returned to the motel office and asked for a refund, claiming the air conditioner in the room did not work. The manager told him the motel policy prohibited refunds; he then went to Berber's room and confirmed the air conditioner was working.

When the manager again refused Berber's demand for a refund, Berber began to chase him and said, "We'll see about getting that." Berber punched the manager and grabbed his wallet out of his pants pocket. In addition to the manager's identification, social security and medical cards, the wallet contained about $218. With the wallet, Berber walked back to his truck and drove away.

Berber was charged with robbery. He was represented by appointed counsel. He did not waive his right to a speedy trial, so January 17, 2023 was the last day the case could be brought to trial.

In December 2022, Berber made a motion to relieve his appointed counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. However, at the conclusion of the confidential hearing, Berber agreed to take the motion off calendar.

The court set the case for trial on January 11, 2023; because neither side was ready for trial that day, the court continued the matter to January 17, the last day on which trial could commence.

On January 17, 2023, both sides appeared in the master calendar court and conferred with the court about their trial readiness. When the case was called, both sides announced they were ready for trial. The court ordered the "[l]ast day trial assigned [to a courtroom] forthwith." The court indicated the trial would commence at 1:30 p.m. that day.

3

After the court sent the case to a courtroom, Berber personally addressed the court, stating "[m]y family's hired private counsel." The court directed Berber to discuss the issue with his lawyer. After Berber conferred with his attorney, counsel informed the court that Berber "just told me that his family's hired private counsel" and that Berber "wants to waive time to continue the case." The court replied "[t]hat's too late for that" and again stated "the matter's assigned . . . ."

After a break in which the court heard other matters, the court re-called Berber's case: "I brought this back because I think I moved a little bit too quickly with regard to what was being told to me right when I was sending the case out for trial. Okay. So I wanted to bring it back and make sure everything was clear."

The court then stated, "I . . . talked to the attorneys informally early this morning and indicated to the attorneys – Mr. Berber wasn't up at that time – and I had told the parties we had a number of departments that were available for trial; we would be prioritizing departments for the parties that announced ready. [¶] I was told, at least by [counsel] that Mr. Berber was ready to go to trial . . . ."

The court then asked Berber's counsel if he had any indication, at the time the case was discussed informally, that Berber would be making a request to hire private counsel. Counsel responded "no."

The court then acknowledged it had "kind of moved quickly" after Berber made his oral request, and then invited Berber's counsel to make "any request on behalf of Mr. Berber" and "make your record now."

Counsel explained that Berber told him he had retained private counsel, Thomas Bundy, and counsel confirmed that he first became aware of that development when Berber made his request to the court that day. The

4

court then asked Berber why Bundy was not in court if he was ready to go, and Berber responded that Bundy was not available and had asked "for a continuance till the 1st or the 2nd of February."

The court then asked when Berber retained his private counsel, and Berber stated it was before the initial January 11 trial date. He stated his appointed counsel had not been present at that hearing, and that he "had to file a Marsden motion just to get him to show up."

The court then explained to Berber that "[i]f you hired private counsel at some particular point prior to the date of January 11th and the case was pending the last day for trial on January 17th, to the extent that that attorney was going to come in and substitute in for your case, you could have added it to calendar and either had been ready for trial by [the] 17th or made a request. [¶] I'm being told right on the heels of sending the case out for trial that there is going to be a request to hire private counsel after we've met and conferred and found a courtroom for your case."

Berber responded, "I didn't realize there was an issue with that," adding "I thought my case would be thrown out."

The court then stated "I'm finding that your request to hire private counsel on the heels of the case being sent out for trial on its last day is not timely. . . . If Mr. Thomas Bundy was here, I probably might think about it differently, but he's not even here. So it's untimely."

## DISCUSSION

The Sixth Amendment guarantees a criminal defendant the right to retain counsel of his choice if can afford to do so. (U.S. Const., 6th Amend.; *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 144.) Courts are required to "'make all reasonable efforts'" to accommodate a defendant's choice of private

5

counsel in criminal proceedings. (*People v. Courts* (1985) 37 Cal.3d 784, 790 (*Courts*).)

In this case, Berber contends the court acted unreasonably in refusing his request to continue the trial to accommodate the fact he had retained new counsel. We review this assertion under the abuse of discretion standard. (*Courts, supra,* 37 Cal.3d at p. 790 ["the granting of a continuance is within the discretion of the trial court"]; *People v. Jeffers* (1987) 188 Cal.App.3d 840, 850 ["In deciding whether the trial court's denying a continuance was so arbitrary as to deny due process, this court 'looks to the circumstances of each case, "particularly in the reasons presented to the trial judge at the time the request [was] denied."'"].)

As Berber acknowledges, the right to substitute counsel is not absolute. Instead, "[t]he right to such counsel 'must be carefully weighed against other values of substantial importance, such as that seeking to ensure orderly and expeditious judicial administration, with a view toward an accommodation reasonable under the facts of the particular case.'" (*Courts, supra,* 37 Cal.3d at p. 790, quoting *People v. Byoune* (1966) 65 Cal.2d 345, 346 (*Byoune*).)

In *Byoune*, the Supreme Court stated that "[a] defendant may not . . . demand a continuance if he is unjustifiably dilatory in obtaining counsel [citation], or if he arbitrarily chooses to substitute counsel at the time of trial." (*Byoune, supra,* 65 Cal.2d at p. 346; accord, *Courts, supra*, 37 Cal.3d at pp. 790-791.)

In *People v. Brady* (1969) 275 Cal.App.2d 984, cited with approval in *Courts, supra,* 37 Cal.3d at p. 792, fn.4, the appellate court affirmed the denial of the defendant's request to substitute counsel because "there was no logical explanation given for the defendant's waiting until the eve of trial

6

before attempting to obtain substitute counsel. A defendant in a criminal case who desires to retain counsel is required to act with some degree of promptness and diligence." (*Brady,* at pp. 993-994.)

Berber contends there is insufficient evidence to support the conclusion he was unjustifiably dilatory in this case, or that he arbitrarily chose to substitute counsel at the time of trial. We disagree.

In *Courts*, the Supreme Court noted that the appellant's "motion represented a timely assertion of appellant's intentions" because it "was made more than a week before trial." (*Courts, supra*, 37 Cal.3d at p. 792.)

In this case, by contrast, although he claimed to have retained his new counsel at least a week before trial, Berber did not inform either his appointed counsel or the court of that fact;[1] nor did his new counsel contact retained counsel or confirm with the court his intention to take over Berber's representation. Instead, Berber waited until after his counsel had announced ready for trial on the last day the case could be brought to trial, and the court

---

[1] Although Berber claims he had told the attorney who appeared at his January 11, 2023 trial date both "that he had retained private counsel" and "that he planned to retain counsel," the record does not support either contention. What it reflects is that Berber informed the master calendar court that he had already retained the private counsel "prior" to January 11, not that he "plan[ned] to" do so, and then that he "spoke to whoever [his appointed counsel] sent to represent me on that date." But Berber did not specify what he said to that attorney. Instead, Berber's reference to speaking to the attorney who represented him appeared to be related to his complaint about his retained counsel's failure to appear.

Moreover, the inference Berber asks us to draw about what he might have said to the attorney who represented him at the January 11 hearing is undermined by his subsequent response when the court noted he could have brought his request to substitute counsel to the court's attention during the week before the January 17 trial date: i.e., that he did not think it was important because he was confident the case would be "thrown out."

7

had given the case a priority assignment to one of its limited number of courtrooms. That does not demonstrate diligence.

In arguing he was timely in obtaining new counsel, Berber points to the fact he filed a *Marsden* motion in December 2022, a month before trial, and thus had made the court aware he was unhappy with his appointed counsel. But as Berber concedes, he subsequently agreed to withdraw that motion and to try to work with his appointed counsel.

The problem here is not that Berber waited too long to retain counsel; it is that he waited too long *after* retaining counsel to inform the court of his intent to substitute. Thus, the *Marsden* motion, which was made and withdrawn weeks before Berber retained his new counsel, became irrelevant in assessing whether the court abused its discretion in concluding Berber failed to act diligently.

Berber also contends he was not dilatory because he made his motion to substitute counsel at the first moment he could, as the decision to send the case out to a courtroom for trial had been made at the "case conference" held between counsel and the court in his absence. But the decision to send the case out for trial did not result from the case conference on January 17. That decision had effectively been made on January 11, when the case was trailed to January 17—the last date on which trial could commence.

Berber had a clear opportunity to broach the subject on January 11—which was after the date he claims he had retained new counsel. But Berber said nothing to the court about wanting to substitute new counsel at that time. He could have informed his appointed counsel, or asked his new counsel to notify the court or appointed counsel, during the week between the two hearings. He did not.

8

Instead, by his own admission, Berber decided to do nothing because he believed the case would be "thrown out." It was only after the case was assigned to a courtroom for trial that Berber decided to say something. That hardly suggests diligence.

Berber argues the court erred when it concluded that granting a continuance to allow him to retain new counsel "would disrupt 'the orderly processes of justice.'" According to Berber, the court's concern was improperly focused on "the administration of justice on a system-wide basis, rather than any case-specific concerns." We disagree. While the court did identify a systemic concern related to the shortage of courtrooms, it also indicated it was concerned that allowing Berber to continue his trial after the court had already given his case priority would impair the court's ability to otherwise employ the already-assigned courtroom that day. Such a concern by a busy master calendar judge is legitimate.

Berber argues it was not his fault that his appointed counsel informed the court they were ready for trial in his absence. Again, we disagree. Had Berber acted diligently to inform his appointed counsel that he had retained a new lawyer, his appointed counsel could have informed the court that Berber was not ready for trial, and that he desired a continuance. It was Berber's failure to do so which impaired the court's ability to ensure that all available courtrooms were properly utilized.

Absent an appearance by the new attorney, or some other communication from him, the court could not determine whether that lawyer had actually been retained. Moreover, absent an appearance or other evidence of the attorney's agreement to take the case, the court could not order that attorney to appear on any future date. As the court observed, its

9

ruling might have been different had the attorney been present in court. We find no fault with the court's reasoning.

Finally, in his reply brief, Berber disputes the Attorney General's contention that the court considered the circumstances of the case and Berber's arguments before ruling. This is an assertion Berber appeared to make in an argument heading in his opening brief, but he failed to develop that argument or provide citations to support it. It is consequently waived. (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, [they are] . . . waived"]; *People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9 [argument made for first time in reply brief is waived].)

But even if it were not waived, the claim is not persuasive. In Berber's view, the court denied his request peremptorily, and then recalled the matter "only to further develop the factual record in case of an appeal, not to reconsider or reopen the matter." We are not persuaded.

When the court recalled the matter, it acknowledged "I brought this back because I think I moved a little bit too quickly with regard to what was being told to me right when I was sending the case out for trial." The court then invited Berber's counsel to make "any request on behalf of Mr. Berber." The court asked Berber for additional information about his hiring of new counsel; the court then sought a response from the prosecutor and additional factual information from Berber's appointed counsel. Only after hearing all of that did the court rule: "I am finding that your request to hire private counsel . . . is not timely."

We find no abuse of discretion in the court's denial of Berber's request for a continuance.

## DISPOSITION

The judgment is affirmed.


GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.